# CIRCUIT COURT OF BALTIMORE CITY.

Filed March 11, 1925.

C. J. GALLAGHER, ET AL.,
VS.
LOUIS MANN, ET AL.

*Messrs. George W. Lindsay, Edgar Allan Poe, L. B. Keene Claggett, John L. Sanford* and *Vincent J. Demarco* for creditors.

*J. Cookman Boyd* for the Distillery.

STEIN, J.—

The corporate defendant (herein called the Distillery) defends because:

1. As a court of equity does not have jurisdiction to determine the questions of indebtedness vel non; it should not appoint a receiver or receivers, but, at the most, only should hold these proceedings until the questions of indebtedness to the various petitioners have been determined, in the suits pending in the law courts when the bill in this case was filed.

2. That it does not owe any of the petitioners.

## I.

This bill was brought among other things upon the theory, that the sale named in it and in the Distillery's answer violated the Sale of Goods in Bulk Act; thereafter a petition was filed charging such gross mismanagement of corporate moneys as further imperiled the creditors of the Distillery, a corporation solvent as well because of the non-payment of claims of its creditors maturing in ordinary course of business, as because the fair value of its assets is much less than its liabilities.

The hearing was had on the issues raised by the bill, petition and answer.

The transaction, set out in the Distillery's answer and its President's testimony at the hearing, shows its corporate assets were turned over to a purchaser who bought practically all the assets of Distillery, save its landed properties, under an agreement which allowed him to sell the assets he so bought under color and cover of the corporate name, and which he was doing when the bill was filed; so that the other corporate assets could have been made liable for the debts of this purchaser. The testimony shows the President collected more than $30,000 of corporate funds, reduced them to cash and kept the cash in his own possession; that the defendant trustees (such for the benefit of the Distillery) collected more than $100,000 of its moneys; either jointly or severally kept it in their own possession; paid a large part thereof to a creditor, "under a claim for money loaned;" although the books of the Distillery did not show the receipt of any moneys loaned, or that the persons to whom payment was made was a creditor. Shortly after the bill was filed and before the hearing, one of the trustees withdrew from bank a large sum belonging to the Distillery; got a cashier's check therefor, which he kept in his possession, until upon his request the Court designated someone to whom he gave the check to hold pending the result of these proceedings.

These transactions are condemned by the statute against fraudulent conveyances, commonly called the Statute of 13 Elizabeth; which our Court of Appeals has construed "to render void all deeds, etc., which by their terms, hinder, delay or defraud creditors," without reference to what may have been the real purpose in the mind of the grantor, or any inquiry outside of the deed to ascertain the real intent of the parties. When any transaction necessarily produces the effect which a statute declares fraudulent as against creditors the Court will pronounce each act fraudulent." Swan vs. Dent, 2 Md., Ch. 111, note folio 94 top.

"Creditors under this statute embrace not only creditors technically so, but 'all others who have causes of action or suit or any penalty of forfeiture, and actions of slander, trespass and other torts'." Swan vs. Dent, ibid 111, note b.

So that, the conceding the transactions above named were entered into in good faith; they are condemned by this Statute of Elizabeth, a court of equity

has jurisdiction to inquire into them so as to strike down then as void; the pursuit of his inquiry requires adjudication of the claims of creditors.

## II.

As to the claims:

1. The sale named in the evidence of the 105 barrels of whiskey belonging to James Dever is void; he is entitled, either to the return of these goods or to their fair market value at the time of the sale, less, however, the following:

A. Storage charges as follows, viz.:

1. At the rate named in each certificate (i. e., six cents per barrel per month) from its date until April 3rd, 1923, when in ordinary course, he should have received the letter of April 2nd, 1923, notifying him of the increased rate.

2. At the rate named in bills accompanying that letter, i. e., one dollar per month from April 3rd, 1923, to September 2nd, 1923, the average date of the delivery of the barrel to the Concentration Warehouse for storage.

3. At thirty-five cents per barrel from that date until removal by Dever; this is the twenty-five cents per barrel charged by the Concentration Warehouse, and ten cents per barrel overhead of bookkeeping and collecting. If desired I will allow opportunity to show the amount of the overhead charge is wrong.

B. The sums paid by moving the whiskey to the Concentration Warehouse.

C. Any other sums due and not paid, including taxes and any proper charge for regauging.

To fix the storage rate is difficult.

While Mr. Dever was a large and experienced dealer in whiskeys, owns in addition to the 105 barrels above named a large amount of other whiskey in barrels, he did not concern himself about the whiskey involved in this case; did not pay any attention to the bills for storage, enclosed in the above named letter of April 2nd, 1923, although as a large dealer, he must have known, that because of the great change in conditions in the whiskey trade, since he bought the 105 barrels of whiskey, they could not have been stored for six cents per barrel per month, the rate named in his warehouse receipts therefor without a large loss; and that storing whiskey imposed upon the Distillery large and heavy charges, not contemplated when the receipts were issued; knowing this, he did not attempt to withdraw the whiskey, as he could have done under his license; refused to pay the new and additional charges; did not tender the money for the charges he admitted to be due; although when he received the letter of April 2nd, 1923, some of these charges were more than six years old, some being due for taxes paid for him by the Distillery.

On the other hand, the Distillery, knowing the increasing cost and risk of storing and of caring for the whiskey; knowing Dever's business address in Philadelphia, did not demand any charges nor notify Mr. Dever either of any change in the storage rate or of the imposition of the new charges, until the letter of April 2nd, 1923, which contained bills of an increase of the contract rate set out in the warehouse receipts, as well as the new charges; some dating from November 17th, 1918, and not warranted by the receipts.

In the language of Mr. Justice Holmes in Mackenzie vs. Engelhard (U. S. Supreme Court), 69 Law Ed. 95 at 97, "the parties (Mr. Dever and the Distillery) stood upon equal ground. * * * each seems to have been trying to get the better of the other and neither can get much help from atmospheric considerations." Mr. Dever did not care to pay the charges due; the Distillery did not notify him either of their accumulation or of the increased rates or the new charges, but without notice increased the old rates, attempted to impose new charges, and after his refusal to pay, did not attempt to enforce payment until the sale of January, 1924.

Under these circumstances, the Distillery cannot complain if held to the six-cent rate until the probable receipt of the letter of April 2nd, 1923; Mr. Dever cannot complain, if thereafter and until the removal of the whiskey into the Concentration Warehouse, he is charged with the one dollar per barrel rate named in the evidence.

## III.

The bar set up to the Gallagher claim is limitations. I do not know of any-

thing in the record, either removing or preventing that bar, unless referred to such, will hold the claim so barred.

## IV.

The Slomovitz claim, also called the Dougherty claim, is for the return of money paid on account of the purchase price of five thousand cases of whiskey at $30 per case, which Slomovitz bought but the Distillery did not deliver.

The Distillery denies liability on the ground that Slomovitz (a) because of the increase in the market value of the whiskey bought; (b) of his inability to get permits to remove the whiskey; (c) of the accumulation and increase of the heavy charges against it; first abandoned, then compromised this claim for the sum of $43,000, which sum was paid him by the Distillery's check of August 9th, 1922.

The evidence on this point is oral and written.

The oral evidence conflicts; numerically, favors the claimant; although the testimony of the defendant's witness Morrell, who gave the check to Slomovitz is forceful and persuasive.

The documentary evidence is the strongest and most persuasive of that offered; is undisputed; was made by the Distillery, when the matters occurred; consists mostly of entries on the Distillery's books, made in usual course of business, and was intended to correctly set out what occurred.

On the $43,000 check are the words "In payment of balance due," put there by or for the maker when the check was drawn. The ledger account shows this check credited on account; that the account is open and shows a credit due Slomovitz. These writings made by the Distillery are convincing and corroborate the testimony of the claimant and his witness.

The history of the Distillery is persuasive of the correctness of these writings. The ownership of all the stock of the Distillery changed since the happening of the transaction upon which the claim is founded; its books show payment to it of the sums claimed; the various buyers of all the shares of the stock of Distillery, must have had statements of its assets and liabilities taken from its books; if the entries were wrong or incomplete, the Distillery did not correct them, but turned over its books to the present stockholders, and when so turned over, the Slomovitz ledger account showed due him the sum now claimed.

While Distillery's answer set up that the 5,000 cases of whiskey bought were subject to heavy charges, it did not offer evidence to support this averment.

I will sign a decree in accordance herewith.